UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISVISION

MEREDITH SUMMER

Plaintiff,                                          Case No.: 2:21-CV-12936

vs.                                                 Hon. F. Kay Behm
                                                    United States District Judge

DETROIT PUBLIC SCHOOLS
COMMUNITY    DISTRICT,    NIKOLAI,               Hon. David R. Grand
VITTI,   individually   and   in   his   official     U.S. Magistrate Judge
capacity,    and    ADRIANA    RENDON,
individually and in her official capacity

Defendants.

---

# PLAINTIFF'S RESPONSE IN TO DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

The Defendants bring a motion to dismiss under FRCP 12(c). That means that the factual allegations in Plaintiff's Complaint must be taken as true.

More importantly, Defendants concede that in deciding a motion to dismiss for failure to state a claim upon which relief may be granted, the question is whether there is a "plausible First Amendment Freedom of Speech which is a matter of public concern."

The issue that is a matter of public concern is that of violence in the schools. It is not simply a "matter of public concern," it is a matter of *national* concern, from the schools to Congress and to the presidency.

As this country now realizes—*violence breeds violence*. A student physically attacking a teacher while she is teaching in the classroom cannot be addressed as simply an "individual" act against an "individual" teacher. Such violence has two aspects: (1) the act of violence itself; and (2) the way and manner in which the school administrators address the act of violence in the classroom. The latter is important because classroom teachers must determine whether they will be protected by the administration.

Teachers are the ultimate "public." School administration policies that fail to protect teachers against violent physical attacks in the school affect and concern all of the public. The parents and children who witness such violence become the "public" as they discuss their fears and concerns with as many people as possible because—*violence breeds—violence.*

A teacher being violently and physically attacked in the school where she must teach, is not simply a "plausible" question, it is a serious matter of concern for not merely the public, but also, the nation itself.

Meredith Summer was physically attacked in her 6th grade classroom by one of her students. The attack was witnessed by all of the students in the classroom. She used her private union Facebook page to criticize the way and manner the violent attack was addressed by the school's administrators.

Because Ms. Summer's speech, which expressed her frustration and disappointment in the manner in which her school administrators responded to her being violently physically attacked by a student in the presence of the entire classroom: (1) was transmitted on a private union Facebook page for union members only; (2) occurred after school hours, off the school's campus, and did not name the school or administrators involved; and (3) discussed a matter of grave public concern, Defendant's disciplinary action against Ms. Summer constituted a violation of her right to freedom of speech guaranteed and protected by the First Amendment.

The Supreme Court's use of the word "plausible" in *Ascroft v. Iqbal*, 556 U.S. 662 (2009), is significant. Plausible eliminates the necessity to prove that the speech at issue is probably a matter of public concern. In fact, "plausible' is less restrictive than "possibly" a matter of public concern. In other words, the "plausible" test simply requires that the person seeking the protection of the First Amendment, only has to allege that the statement might or might not be a matter of public concern. There is no other pleading requirement because, obviously, the right to free speech violence in our schools is always and necessarily a matter of public concern.

## COMMON FACTUAL ALLEGATIONS

The following specific factual allegations asserted in Plaintiff's Complaint must be taken as true in deciding Defendants' motion to dismiss:

> 7. That on or around June 25, 2018 Plaintiff, Meredith Summer a teacher for over 20 years accepted an offer of employment as an elementary school teacher at Neinas Dual Language Learning Academy.

> 8. That Defendants' discriminatory treatment of Plaintiff began in September 2018 as she was the only Neinas teacher assigned by Defendant Rendon to an oversized classroom, in direct violation of the Detroit Federation of Teacher's (DFT) collective bargaining agreement. Specifically, Plaintiff was assigned a class containing 36 or more students, while all similarly situated non-Jewish teachers were assigned classrooms of no more than 18 students.

> 9. That Defendants retaliated against Plaintiff's complaint of unfairness by (1) refusing to allow Plaintiff to participate in the meeting determining the manner in which the oversized class would be reduced to ensure fairness; and (2) unfairly assigning all of the students with behavioral and learning challenges to Plaintiff.

> 10. That Defendant Rendon also discriminated and retaliated against Plaintiff by placing an "excessive absence" warning letter in Plaintiff's personnel file for observing Jewish High Holy Days, while not treating non Jewish teachers in a similar manner for the same or similar conduct.

> 11. That in October 2019, one of Plaintiff's 6th grade students with serious learning and behavioral challenges violently and physically attacked Plaintiff in the classroom. Plaintiff was attacked because she

removed from the student's notebook a homophobic
note referencing another student which the attacker
was showing her laughing classmates.

12. Defendants condoned and ratified the student's
violent physical attack upon Plaintiff by (1) failing to
expel Plaintiff's attacker; (2) returning Plaintiff's
violent attacker to Plaintiff's classroom; and (3) taking
disciplinary against Plaintiff, despite the fact that she
never laid a hand on the student. Plaintiff's attacker
even boasted to friends on social media that the school
"principal" told her that she "did nothing wrong."

13. That Plaintiff informed fellow DFT union
members about being violently and physically attacked
by one of her 6th grade students on the DFT's
"private/members only" Facebook page. Plaintiff also
expressed her disappointment and concern that,
neither, the school's principal, Defendant Rendon nor
the assistant principal ever asked Plaintiff "what
happened" or to see if she was "okay." Nothing
Plaintiff stated in her DFT post was false.

14. That in direct retaliation against Plaintiff for
speaking out as a private citizen on DFT's members
only Facebook page on matters of public interests,
Defendants unleashed a campaign of discriminatory
and retaliatory acts against Plaintiff that were carefully
crafted and designed to cause Plaintiff to quit her
teaching profession, or justify her termination.

15. Defendants' retaliatory acts included, but are not
limited to: (1) unjustified "poor" and unsatisfactory
performance evaluations; (2) unjust disciplinary
actions based on contrived, baseless and
discriminatory accusations of misconduct; and (3)
conducting a "sham" investigation of Plaintiff's
complaints against Defendant Rendon.

16. That Defendants' unrelenting retaliatory acts forced Plaintiff to quit her teaching job at Neinas for the sake of her physical and emotional health and wellbeing.

17. That as a further act of discrimination and retaliation Defendants Viti and Rendon recommended that Plaintiff be terminated to prevent Plaintiff from being able to continue her teaching career at another school in the district.

18. Defendants' termination letter to the DPSCD school board was based upon contrived, baseless, unsupported, unsubstantiated and accusations of misconduct and blatant lies.

19. That prior to Defendants' discriminatory and retaliatory conduct, Plaintiff had received "effective and highly effective" performance evaluations as a teacher.

20. That, after 30 parents and students passionately and strongly protested Defendants' attempt to terminate Plaintiff, Defendant changed its termination letter to an unjustified and unwarranted 14 day disciplinary suspension without pay, which Defendant DPSCD approved. Defendants' suspension letter also contained an unjustified and unwarranted threat of "criminal prosecution" against Plaintiff.

21. Defendants' retaliation of Plaintiff continued even after Plaintiff was forced to transfer to another school by sending Plaintiff's new principal an unsolicited copy of, not only, the 14 day suspension letter threatening Plaintiff with "criminal prosecution," but all of the fraudulent and baseless documents used by Defendants to justify their recommendation that Plaintiff be terminated for misconduct.

22. That, despite Defendants' carefully panned and orchestrated attempt to sabotage Plaintiff's teaching position at the new school, Plaintiff has received glowing performance evaluations, including, being given the "highest" rating in several teaching categories. (Ex. 1, Complaint)

24.That Defendant DPSCD'S official and unofficial policies and customs encouraged, caused, allowed, condoned, ratified and enabled Defendants Vitti, and Rendon to violate Plaintiff's constitutional right to freedom of speech without fear of discipline for those violations.

25. That the named individual Defendants were not disciplined for their violations of Plaintiff's constitutional rights, and therefore, Defendant has implicitly approved, ratified, or adopted the individual Defendants' unconstitutional actions.

26. There is an obvious need for DPSCD to train all of its employees on First Amendment rights. Defendant, therefore, has demonstrated a policy of deliberate indifference to such civil rights violations.

27. That DPSCD's callous, reckless, wanton, bad faith and malicious actions were under color of law, for which Plaintiff has and will continue to suffer damages.

28. That these deprivations under color of law are actionable and may be redressed by 42 U.S.C. Sec. 1983. (Ex. 1, Complaint)

31. That Defendants Vitti, and Rendon violated Plaintiff's clearly established First Amendment right to freedom of speech by subjecting Plaintiff to a campaign of unjust disciplinary actions, and

harassment, recommendations of an unjust termination, that was subsequently reduced to an unjust 14 day unpaid suspension in retaliation for Plaintiff exercising her right to freedom of speech on matters of public concern on Plaintiff's private DFT union members only Facebook page. (Ex. 1, Complaint)

36. That as an Jewish employee, Plaintiff is entitled to protection under the Elliott Larsen Civil Rights Act to be free from discrimination on account of Plaintiff's religion and Jewish stereotype in Plaintiff's employment.

37. That Defendants discriminated against Plaintiff by treating Plaintiff differently and less favorably than similarly situated non-Jewish teachers, and being Jewish was a significant factor in Defendants' adverse decisions, which included; (1) assigning Plaintiff, the only Jewish teacher to an oversize class in excess of 36 students, while similarly situated non-Jewish teachers were assigned classroom with no more than18 students; (2) penalizing Plaintiff for exercising her right to observe the Jewish High Holy Days, while similarly situated non-Jewish teachers were not penalized for absence in observance of Christian holidays; (3) refusing to allow Plaintiff to participate with in Defendant Rendon's meeting with non-Jewish teachers to ensure fairness in the distribution of students with learning and behavioral challenges;  (4) assigning all of the students with the most serious learning and behavioral challenges to Plaintiff; (5) disciplining Plaintiff, but not, disciplining non-Jewish teachers for the same or similar conduct, resulting in Plaintiff being receiving unjustified poor and unsatisfactory evaluations; (6)  falsely accusing Plaintiff of acts of misconduct because of

Plaintiff's Jewish faith; and (7) disciplining Plaintiff for private speech as a private citizen on her private DFT members only Facebook page, while not similarly disciplining non-Jewish teachers for similar conduct.

38. That, Defendants intentionally discriminated against Plaintiff, were predisposed to discriminate against Jewish teachers, and acted upon that predisposition in Defendants' discriminatory treatment of Plaintiff. (Ex. 1, Complaint)

Based upon the above specifically outlined and detailed factual allegations which are deemed true, Plaintiff has stated a plausible claim against (1) Defendant DPSCD as a municipality for reckless, indifference, and ratification of the individual Defendants' violation of Plaintiff's clearly established right to freedom of speech (Count I); (2) Defendants Rendon and Vitti for violating Plaintiff's clearly established right to freedom of speech (Count II); and (3) Defendants Rendon and Vitti for discriminatory treatment against Plaintiff because of her Jewish religion in violation of the Elliott Larsen Civil Rights Act (Count III).

## **ARGUMENT**

**I. PLAINTIFF ALLEGES THAT SHE WAS DISCIPLINED FOR USING A UNION MEMBERS ONLY PRIVATE FACEBOOK PAGE TO EXPRESS HER FRUSTRATION AND DISAAPOINTMENT IN THE MANNER IN WHICH THE SCHOOL ADMINISTRATORS RESPONDED TO PLAINTIFF BEING VIOLENTLY AND PHYSICALLY ATTACKED BY A STUDENT IN THE CLASSROOM. THEREFORE, PLAINTIFF HAS "PLAUSIBLY" ALLEGED A VIOLATION OF HER RIGHT TO FREEDOM OF SPEECH**

Plaintiff's first amendment claim is supported by the following allegations

which are taken as true:

> 11. That in October 2019, one of Plaintiff's 6th grade students with serious learning and behavioral challenges violently and physically attacked Plaintiff in the classroom. Plaintiff was attacked because she removed from the student's notebook a homophobic note referencing another student which the attacker was showing her laughing classmates.
>
> 12. Defendants condoned and ratified the student's violent physical attack upon Plaintiff by (1) failing to expel Plaintiff's attacker; (2) returning Plaintiff's violent attacker to Plaintiff's classroom; and (3) taking disciplinary against Plaintiff, despite the fact that she never laid a hand on the student. Plaintiff's attacker even boasted to friends on social media that the school "principal" told her that she "did nothing wrong."
>
> 13. That Plaintiff informed fellow DFT union members about being violently and physically attacked by one of her 6th grade students on the DFT's "private/members only" Facebook page. Plaintiff also expressed her disappointment and concern that, neither, the school's principal, Defendant Rendon nor the assistant principal ever asked Plaintiff "what happened" or to see if she was "okay." Nothing Plaintiff stated in her DFT post was false.
>
> 14. That in direct retaliation against Plaintiff for speaking out as a private citizen on DFT's members only Facebook page on matters of public interests, Defendants unleashed a campaign of discriminatory and retaliatory acts against Plaintiff that were carefully crafted and designed to cause Plaintiff to quit her teaching profession, or justify her termination.

15. Defendants' retaliatory acts included, but are not limited to: (1) unjustified "poor" and unsatisfactory performance evaluations; (2) unjust disciplinary actions based on contrived, baseless and discriminatory accusations of misconduct; and (3) conducting a "sham" investigation of Plaintiff's complaints against Defendant Rendon.

16. That Defendants' unrelenting retaliatory acts forced Plaintiff to quit her teaching job at Neinas for the sake of her physical and emotional health and wellbeing.

17. That as a further act of discrimination and retaliation Defendants Viti and Rendon recommended that Plaintiff be terminated to prevent Plaintiff from being able to continue her teaching career at another school in the district.

31. That Defendants Vitti, and Rendon violated Plaintiff's clearly established First Amendment right to freedom of speech by subjecting Plaintiff to a campaign of unjust disciplinary actions, and harassment, recommendations of an unjust termination, that was subsequently reduced to an unjust 14 day unpaid suspension in retaliation for Plaintiff exercising her right to freedom of speech on matters of public concern on Plaintiff's private DFT union members only Facebook page. (Ex. 1, Complaint)

The resolution of Defendants' motion to dismiss is controlled by the U.S. Supreme Court's decisions in *Rankin v. McPherson*, 483 U.S. 378 (1987), *Mahanoy Area School District v. B.L.,* 594 U.S. 141 S.Ct. 2038 (2021); and *Pickering v. Board of Education,* 391 U.S. 563 (1968). None of these controlling authorities were cited by Defendants.

In *Rankin, supra*, the plaintiff a nineteen year old black woman was employed as a data entry clerk by the Harris County Constable's Office. On March 30, 1981 she heard a radio newscast announcing the attempt by John Hinckley to assassinate President Ronald Reagan. Immediately upon hearing the news she and another black co-worker discussed the policies of the President and how the policies affected black people. During the conversation the plaintiff also stated that if another attempt was made on the life of the President she hope the assassin would be successful. The day after plaintiff admitted to making the statement, she was discharged.  The *Rankin* Court affirmed the Fifth Circuit Court of Appeals, holding that the remarks about the President violated the first amendment because the remarks are of interest to the public, and, therefore, plainly of public concern.

In *Mahanoy, supra*, a high school student was suspended for using vulgar language in a "Snapchat" post to her friends to express her frustration and disappointment in not making the school's cheerleading squad. In finding that the plaintiff's speech was protected by the First Amendment, the Court held:

> Putting aside the vulgar language, the listener would hear criticism, of the team, the team's coaches, and the school—in a word or to, criticism of the rules of a community of which B.L. forms a part. This criticism did not involve features that would place it outside the First Amendment's ordinary protection. B.L's post while crude, did not amount to fighting words.

[Citation omitted] And while B.L. used vulgarity, her speech was not obscene as this Court has understood the term. [Citation omitted]. To the contrary, B.L. uttered the kind of pure speech to which, were she an adult, the First Amendment would provide strong protection. [Citation omitted]. *Snyder v. Phelps*, 562 U.S. 443, 461 (2011) (First Amendment protects "even hurtful speech on public issues to ensure that we do not stifle public debate.") *Rankin v. McPherson*, 483 U.S. 378, 387 (1987) ("The inappropriate …character of a statement is irrelevant to the question whether it deals with a matter of public concern")

*     *     *

The strength of the school's anti-vulgarity interests is weakened considerably by the fact that the plaintiff spoke outside the school the school on her own time. See, *Morse*, 551 U.S., at 405 (clarifying that although a school can regulate a student's use of sexual innuendo in a speech given within the school, if the student "delivered the same speech in a public forum outside the school context, it would have been protected.")

Here, because Plaintiff's speech discusses being violently and physically attacked by one of her students while teaching in her classroom, she has plausibly alleged a matter of public concern, and because she used the union's private Facebook page to express to union members her frustration and disappointment in the manner in which the school administrators responded, her speech is protected by the First Amendment. See, *Rankin, supra, Mahanoy, supra*, and *Snyder v. Phelps*, 562 U.S. 443, 461 (2011) ("Given that Westboro's speech was at a public place on a matter of public

concern, the speech is entitled to "special protection" under the First Amendment.")

Plaintiff's right to freedom of speech as a public employee was clearly established at the time she was disciplined. Defendants Rendon and Vitti are not entitled to qualified immunity, and therefore may be held liable for their actions. *Pickering, supra,* ("In sum, we hold that…absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal.")

Accordingly, Defendants' motion to dismiss for failure to state a "plausible" First Amendment claim, must be denied, as a matter of law.

## II. DEFENDANT MUNICPALITY IS LIABLE BECAUSE IT RATIFIED AND CONDONED THE VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH BY DEFENDANTS RENDON AND VITTI

Plaintiff's First Amendment claim against the Defendant municipality asserted in Count I is supported by the following allegations:

> 24. That Defendant DPSCD'S official and unofficial policies and customs encouraged, caused, allowed, condoned, ratified and enabled Defendants Vitti, and Rendon to violate Plaintiff's constitutional right to freedom of speech without fear of discipline for those violations.
>
> 25. That the named individual Defendants were not disciplined for their violations of Plaintiff's

-14-

constitutional rights, and therefore, Defendant has implicitly approved, ratified, or adopted the individual Defendants' unconstitutional actions.

26. There is an obvious need for DPSCD to train all of its employees on First Amendment rights. Defendant, therefore, has demonstrated a policy of deliberate indifference to such civil rights violations.

27. That DPSCD's callous, reckless, wanton, bad faith and malicious actions were under color of law, for which Plaintiff has and will continue to suffer damages.

28. That these deprivations under color of law are actionable and may be redressed by 42 U.S.C. Sec. 1983. (Ex. 1, Complaint)

The above factual allegations which must be deemed true, plausibly state a claim upon which relief may be granted against Defendant municipality under the law set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff specifically alleges that Defendant DPSCD maintained a "policy" that showed deliberate indifference, condoned and ratified the violation of Plaintiff's clearly established right to freedom of speech protected by the First Amendment to the U.S. Constitution.

Because Plaintiff has plausibly alleged a *Monell* claim, Defendants' motion to dismiss Count I must be denied, as a matter of law.

### III. PLAINTIFF HAS "PLAUSIBLY" ALLEGED THAT SHE WAS TREATED DIFFERNTLY THAN SIMILARLY SITUATED NON-JEWISH TEACHERS IN VIOLATION OF HER RIGHTS PROTECTED BY THE ELLIOTT LARSEN CIVIL RIGHTS ACT

Plaintiff's claim that she was treated differently and less favorably than similarly situated non-Jewish teachers because of her religion, is supported by the following facts:

36. That as an Jewish employee, Plaintiff is entitled to protection under the Elliott Larsen Civil Rights Act to be free from discrimination on account of Plaintiff's religion and Jewish stereotype in Plaintiff's employment.

37. That Defendants discriminated against Plaintiff by treating Plaintiff differently and less favorably than similarly situated non-Jewish teachers, and being Jewish was a significant factor in Defendants' adverse decisions, which included; (1) assigning Plaintiff, the only Jewish teacher to an oversize class in excess of 36 students, while similarly situated non-Jewish teachers were assigned classroom with no more than18 students; (2) penalizing Plaintiff for exercising her right to observe the Jewish High Holy Days, while similarly situated non-Jewish teachers were not penalized for absence in observance of Christian holidays; (3) refusing to allow Plaintiff to participate with in Defendant Rendon's meeting with non-Jewish teachers to ensure fairness in the distribution of students with learning and behavioral challenges;  (4) assigning all of the students with the most serious learning and behavioral challenges to Plaintiff; (5) disciplining Plaintiff, but not, disciplining non-Jewish teachers for the same or similar conduct, resulting in

Plaintiff being receiving unjustified poor and unsatisfactory evaluations; (6)  falsely accusing Plaintiff of acts of misconduct because of Plaintiff's Jewish faith; and (7) disciplining Plaintiff for private speech as a private citizen on her private DFT members only Facebook page, while  not similarly disciplining non-Jewish teachers for similar conduct.

38. That, Defendants intentionally discriminated against Plaintiff, were predisposed to discriminate against Jewish teachers, and acted upon that predisposition in Defendants' discriminatory treatment of Plaintiff. (Ex. 1, Complaint)

On page 18, of Defendants' brief, Defendants state: "Plaintiff fails to allege any names of any other teachers, or grades they taught, or any other facts from which the court could infer that any alleged adverse treatment was because of her religion." Defendants are incorrect.

Nonetheless, to address any possible deficiency in Plaintiff's Complaint, Pursuant to FRCP, 15(a)(1)(B), Plaintiff intends to file a First Amended Complaint *as a matter of right* that will include the *names* of the similarly situated non-Jewish teachers who were treated more favorably than Plaintiff because of her religion.

Respectfully Submitted:

By: /s/ D. Rick Martin
D. Rick Martin (P42484)
13900 Woodward, Avenue
Highland Park, MI 48203
(248) 872-7907
Attorney for Plaintiff

-17-

## CERTIFICATE OF SERVICE

Dewey Rick Martin, states that he is the attorney for the Plaintiff, and on

**JULY 10, 2023**, he caused to be served copies of **PLAINTIFF'S RESPONSE IN**

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**; and this

Certificate of Service upon counsel for Defendants, Theophilus E. Clemons via

email.

By: /s/ *D. Rick Martin*
D. Rick Martin (P42484)
13900 Woodward, Avenue
Highland Park, MI 48203
(248) 872-7907
Attorney for Plaintiff