UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEREDITH SUMMER,                                    Case No. 21-12936

      Plaintiff,                                    F. Kay Behm
v.                                                  United States District Judge

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT, NIKOLAI VITTI,
and ADRIANA RENDON, Individually
and in their official capacities,

      Defendants.
_____ /

**ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT (ECF No. 50, 51) AND
<u>DENYING PLAINTIFF'S MOTION FOR SANCTIONS (ECF No. 81)</u>**

**I.      INTRODUCTION AND PROCEDURAL HISTORY**

This case is currently before the court on two motions: Defendants'

"motion to dismiss"[1] pursuant to Federal Rule of Civil Procedure 12(c) and

Defendants' motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56(c).  (ECF Nos. 50, 51).  Plaintiff Meredith Summer filed her initial

complaint against Defendants Detroit Public Schools Community District

("DPSCD"), Nikolai Vitti, and Adriana Rendon (collectively "Defendants") in the

---

[1] While Defendants' motion is titled "motion to dismiss," it is brought pursuant to
Federal Rule of Civil Procedure 12(c) and is, therefore, a motion for judgment on the pleadings.

Wayne County Circuit Court on December 12, 2021.  (ECF No. 1).  Defendants

removed this action to the United States District Court, Eastern District of

Michigan on December 16, 2021, based on the inclusion of a federal question.  *Id.*

This case was initially before District Judge Paul D. Borman, but was reassigned to

the undersigned on February 6, 2023.

On July 10, 2023, purportedly in response to Defendants' dispositive

motions, Plaintiff filed an amended complaint pursuant to Fed. R. Civ. P.

15(a)(1)(B).  (ECF No. 53).  Subsequently, Plaintiff filed an amended motion for

leave to file a first amended complaint on July 20, 2023.  (ECF No. 57).  On July 28,

2023, Defendants filed a motion to strike Plaintiff's amended complaint.  (ECF No.

59).  Following a status conference held on August 29, 2023, the court issued an

Order granting Defendants' motion to strike (ECF No. 57) and striking Plaintiff's

amended complaint (ECF No. 53) from the record.  (ECF No. 67).  The court held a

hearing on Plaintiff's motion to file a first amended complaint on November 2,

2023, and issued an Opinion and Order denying that motion on November 8,

2023.  (ECF No. 77).

Both Defendants' motion for judgment on the pleadings (ECF No. 50) and

motion for summary judgment (ECF No. 51) were filed prior to the issuance of the

court's Order on Plaintiff's motion for leave to file a first amended complaint.

(*See* ECF No. 50, 51).  As such, the court's November 8, 2023 Order gave

Defendants an opportunity to file a supplemental brief or amended motion "to

the extent this order denying Plaintiff's motion for leave to amend impacts the

arguments made in Defendants' pending motion to dismiss [] and motion for

summary judgment []" within 14 days.  (ECF No. 77, PageID.908).  Plaintiff would

then have an opportunity to respond to any new arguments within seven days.

*Id.*  Defendant did not file a supplemental brief within this 14-day period.

At the hearing on December 13, 2023, the parties agreed to allow the court

to consider all outside materials submitted as exhibits and transform Defendants'

motion for judgment on the pleadings into a motion for summary judgment as to

all counts.  The court has since considered the arguments made in Defendants'

motions, the subsequent responsive pleadings,[2] the relevant supplemental

briefs,[3] and at the hearing held on December 13, 2023.  (*See* ECF No. 70).  For the

---

[2] Plaintiff did not initially file a response directly addressing the merits of the arguments made in Defendants' motion for summary judgment.  Plaintiff's response, filed on July 14, 2023, solely addresses the impact of their amended complaint on these motions, stating "Defendants' Motion for Summary Judgment and previously filed Motion to Dismiss have been rendered moot by Plaintiff's timely filed First Amended Complaint."  (ECF No. 54, PageID.647).  However, Plaintiff filed a supplemental brief on December 9, 2023, addressing the arguments made on summary judgment.  (ECF No. 80).

[3] Following the hearing on December 13, 2023, the court required the parties to submit supplemental briefs including: (1) a list of everything the court should consider in deciding the motions for summary judgment; (2) where in the record the relevant exhibits can be found; and

reasons stated below, the court **GRANTS** Defendants' motions for summary

judgment.

## II.    FACTUAL BACKGROUND

Plaintiff began teaching at the Neinas Dual Language Learning Academy

("Neinas") on or around June 25, 2018.  (ECF No. 1, PageID.12).  Neinas was part

of Defendant DPSCD, Defendant Vitti was the Superintendent of DPSCD, and

Defendant Rendon was the Principal of Neinas at all times relevant to this claim.

*Id.*, PageID.11.  Plaintiff, who is Jewish, alleges that she was discriminated against

for the first time in September 2018 when she "was assigned a class containing 36

or more students, while all similarly situated non-Jewish teachers were assigned

classrooms of no more than 18 students."  *Id.*, PageID.12.  Plaintiff alleges this

assignment to an oversized classroom was "in direct violation of the Detroit

Federation of Teacher's (DFT) collective bargaining agreement."  *Id*.  Plaintiff

further alleges she complained about the unfairness of this treatment and was

retaliated against in a number of ways, including by being excluded from "the

meeting determining the manner in which the oversized class would be reduced

---

(3) if a relevant exhibit is not presently in the record, an attachment of that exhibit."  (ECF No. 84, PageID.1304-05).  Plaintiff filed a supplemental brief and exhibits on December 18, 2023 (ECF No. 85) and Defendant formally filed a supplemental brief and exhibits on December 19, 2023 (ECF No. 86).

in order to ensure fairness," and was unfairly assigned "all of the students with behavioral and learning challenges." *Id.*  Plaintiff also alleges she was given an "excessive absence" warning letter after she observed several Jewish High Holy Days. *Id.*

Plaintiff's case is also based on Defendants' alleged handling of an incident that occurred in her classroom in October 2019. *Id.*  Plaintiff alleges that "one of [her] 6th grade students with serious learning and behavioral challenges violently and physically attacked Plaintiff in the classroom" after she "removed from the student's notebook a homophobic note referencing another student which the attacker was showing her laughing classmates." *Id*.  Plaintiff alleges she subsequently posted about this incident on the private DFT members only Facebook page. *Id.*, PageID.13; *see also* ECF No. 85-4.  The post "informed fellow DFT union members about being violently and physically attacked by one of her 6th grade students" and "expressed her disappointment and concern that, neither, the school's principal, Defendant Rendon nor the assistant principal ever asked Plaintiff 'what happened' or to see if she was 'okay.'" *Id.*, PageID.13.  Plaintiff further alleges that, "in direct retaliation against Plaintiff for speaking out as a private citizen on DFT's members only Facebook page on matters of public interest, Defendant unleashed a campaign of discriminatory and retaliatory acts

against Plaintiff that were carefully crafted and designed to cause Plaintiff to quit her teaching profession, or justify her termination." *Id.*  These acts included: "(1) unjustified 'poor' and unsatisfactory performance allegations; (2) unjust disciplinary actions based on contrived, baseless and discriminatory accusations of misconduct; and (3) conducting a 'sham' investigation of Plaintiff's complaints against Defendant Rendon." *Id.*

Plaintiff alleges that Defendants Vitti and Rendon "recommended that Plaintiff be terminated to prevent [her] from being able to continue her teaching career at another school in the district." *Id.*, PageID.14.  She ended up receiving a 14-day disciplinary suspension without pay, rather than a termination.  *Id.*  Plaintiff eventually quit her teaching job at Neinas because of "Defendants' unrelenting retaliatory acts," and alleges their retaliation continued "even after Plaintiff was forced to transfer to another school by sending Plaintiff's new principal an unsolicited copy of, not only, the 14 day suspension letter threatening Plaintiff with 'criminal prosecution' but all of the fraudulent and baseless documents used by Defendants to justify their recommendation that Plaintiff be terminated for misconduct." *Id*.

### III. RELEVANT LEGAL STANDARD

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case.  *Id*. at 254.  Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court

must determine whether a jury could reasonably find that the plaintiff's factual

contentions are true by a preponderance of the evidence.  *See id.* at 252-

53.  Finally, if the nonmoving party fails to make a sufficient showing on an

essential element of its case for which it carries the burden of proof, the movant

is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  The court must

construe Rule 56 with due regard not only for the rights of those "asserting claims

and defenses that are adequately based in fact to have those claims and defenses

tried to a jury," but also for the rights of those "opposing such claims and

defenses to demonstrate in the manner provided by the Rule, prior to trial, that

the claims and defenses have no factual basis."  *Id*. at 327.

## IV.   ANALYSIS

Plaintiff's complaint raises three claims: (1) Count I, brought against

Defendant DPSCD alone, for "reckless indifference to Plaintiff's clearly established

constitutional right to freedom of speech" under 42 U.S.C. § 1983; (2) Count II,

brought against Defendants Vitti and Rendon, for "Violation of Plaintiff's First

Amendment Rights" under 42 U.S.C. § 1983; and Count III against all Defendants

for religious discrimination in violation of Michigan's Elliott Larsen Civil Rights Act.

(ECF No. 1, PageID.14-16).  Defendants' motions for summary judgment ask the

court to grant summary judgment in their favor as to all three counts.  The court

will first analyze whether Defendants are entitled to summary judgment on Plaintiff's Section § 1983 claims (Counts I and II), before determining whether they are entitled to summary judgment on Plaintiff's discrimination claim pursuant to Michigan's ELCRA.

A.    <u>Section 1983 Claims (Count I and Count II)</u>

Plaintiff's claims brought under 42 U.S.C. § 1983 are based on Defendants' alleged violations of her First Amendment rights.  Specifically, Plaintiff argues Defendants "unleashed a campaign of discriminatory and retaliatory acts" against her after she made a post on the DFT's members only Facebook page that was critical of the administration.  (ECF No. 1, PageID.13).  Defendants' motion for summary judgment raises four key concerns with Plaintiff's First Amendment claims: (1) her complaint fails to show individual liability; (2) her private Facebook post does not constitute speech that addresses a matter of public concern; (3) the individual Defendants are protected by qualified immunity; and (4) Defendant DPSCD cannot be held vicariously liable.  (ECF No. 50, PageID.536).  These concerns can be distilled down to one key question: has Plaintiff established an underlying violation of her constitutional rights?  Because Plaintiff's Facebook post did not involve a matter of public concern, the court finds that she has not

and, therefore, it is not necessary to address individual liability, qualified immunity, or vicarious liability.

To determine whether a public employer impermissibly retaliated against an employee for their speech in violation of the First Amendment, the court must determine: (1) "whether the employee engaged in protected speech;" (2) "whether the action taken against the employee would discourage an individual of 'ordinary firmness' from engaging in the activity that led to [their] discipline;" and (3) whether the employee's protected speech was 'a motivating factor' behind the adverse action taken against the employee."  *See Marquardt v. Carlton*, 971 F.3d 546, 549 (6th Cir. 2020); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010).  To establish that speech is constitutionally protected, a plaintiff must demonstrate that it "involved matters of public interest or concern," and the employee's "interest in addressing these matters of public concern outweighs the interest of her employer 'in promoting the efficiency of the public services it performs through its employees.'"  *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (citations omitted).  "If a plaintiff's speech does not address a matter of public concern, no further inquiry is necessary."  *Id.*  Alternatively, speech that involves "matters only of personal interest" is not constitutionally protected.  *Id.* at 899; *see also Connick*

*v. Meyers*, 461 U.S. 138, 147-48 (1983) (holding that when a public employee

speaks "as an employee upon matters only of personal interest…a federal court is

not the appropriate forum in which to review the wisdom of a personnel decision

taken by a public agency allegedly in reaction to the employee's behavior.").

Whether speech addresses a matter of public concern is a question of law

for the court to determine.  *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888,

892-93 (6th Cir. 2003).  The court must look to "the content, form, and context of

a given statement, as revealed by the whole record."  *Connick*, 461 U.S. at 147-48.

While an employee's motive for the speech is relevant, the key question is "not

*why* the employee spoke, but *what* [was] said."  *Myers v. City of Centerville, Ohio*,

41 F.4th 746, 760 (6th Cir. 2022) (citing *Westmoreland v. Sutherland*, 662 F.3d

714, 719 (6th Cir. 2011)) (emphasis in original).  Speech is deemed to be

"addressing a matter of public concern" if it relates to "any matter of political,

social, or other concern to the community."  *Id.* at 146.  Courts must look to

whether the speech involves "issues about which information is needed or

appropriate to enable the members of society to make informed decisions about

the operation of their government."  *Id.* (citing *Brandenberg v. Hous. Auth. of

Irvine*, 253 F.3d 891, 898 (6th Cir. 2001)).  "'Passing' or 'fleeting' references to an

arguably public matter do not elevate the speech to a matter of 'public concern'

where the 'focus' or 'point' of the speech advances only a private interest."

*Farhat v. Jopke*, 370 F.3d 580, 592-93 (6th Cir. 2004) (citations omitted).

Examples of statements rising to the level of "public concern" include allegations of public corruption, statements exposing governmental inefficiency and misconduct, and statements addressing a "failure to follow state law, major state policy decisions, or discrimination of some form."  *Myers*, 41 F.4th at 760-61 (citing *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 468 (6th Cir. 2017); *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006); *Boulton v. Swanson*, 795 F.3d 526, 531 (6th Cir. 2015)).  Statements may also be of public concern when they "directly relate to a 'subject of general interest and of value and concern to the public,'" such as a widespread or newsworthy event.  *See Marquardt*, 971 F.3d at 549 (statements made on Facebook about the shooting of Tamir Rice, which had "set off a fierce public debate over whether the officers' actions were justified" were considered matters of public concern).  Even statements addressing an internal personnel dispute may nevertheless involve a matter of public concern if the dispute arose from "actual or potential wrongdoing or a breach of the public trust."  *Myers*, 41 F.4th at 761 (comparing personnel disputes implicating only "the employee's personal interest[s] *qua* employee" with disputes "arising from

wrongdoing or breaches of trust [that] implicate broader interests in good governance and democratic control.").

Plaintiff argues her Facebook post was a matter of public concern because it "informed fellow DFT union members about being violently and physically attacked by one of her 6th Grade students" and "expressed her disappointment and concern that, neither, the school's principal, Defendant Rendon nor the assistant principal ever asked Plaintiff 'what happened' or to see if she was 'okay.'"  (ECF No. 1, PageID.13).  The full text of her Facebook post is as follows:

> A 6th grade girl in my class hit me and pulled my hair today because I took a paper away from her that had unappropriate [sic] writing on it. First time in 20 years this has ever happened! Not one person in admin came to me to ask me what happened or asked if I was ok. "Expect respect"? ☹️

(ECF No. 85-4, PageID.1334).  While her statement addresses an internal personnel dispute, Plaintiff argues it rises to the level of a matter of public concern because it addresses "violence in the schools," which is not only a matter of public concern, but it is also "a matter of *national* concern, from the schools to Congress and to the presidency."  (ECF No. 52, PageID.606).  Further, Plaintiff argues her speech was a matter of public concern because "[s]chool administration policies that fail to protect teachers against violent physical attacks in the school affect and concern all of the public."  *Id.*, PageID.607.  However, the

court does not find that either of these interests are implicated by the explicit language of Plaintiff's Facebook post.  While the court does not contest that violence in schools *may* be a matter of public concern, Plaintiff's post does not comment on either the issue of violence at Neinas or in schools more broadly, rather, it describes one, isolated incident of violence occurring in Plaintiff's classroom.  (ECF No. 85-4).  Plaintiff's post reaffirms that this was an isolated incident, as it states: "First time in 20 years this has ever happened!"  *Id*. Additionally, Plaintiff's post does not comment on any broader trends, recurring failures to address school violence, or school-wide policies approving of this behavior that may be of concern to the broader public.  *Id.*

While it does not appear that the Sixth Circuit has directly addressed a case involving a First Amendment retaliation claim where the key question is whether a statement about "violence in schools" involves a matter of public concern, the Eastern District of New York and the Second Circuit addressed such an issue in *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 423 F. Supp. 2d 38, 51 (E.D.N.Y. 2006), *aff'd sub nom. Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196 (2d Cir. 2010).  While these decisions are not binding on the court, the facts of these cases are relatively similar and, therefore, their reasoning is persuasive.  *See Marku v. Ashcroft*, 380 F.3d 982, 988 (6th Cir.

2004) ("[C]ases from outside the circuit are not binding...but they do have some

persuasive value.").  In *Weintraub*, the plaintiff, a teacher, alleged that the

defendants "violated his First Amendment rights by retaliating against him for

filing a formal grievance with his union that challenged the school assistant

principal's decision not to discipline a student who had thrown books at

Weintraub during class."  593 F.3d at 199.  Prior to filing the grievance, the

plaintiff allegedly told his principal "'[i]f nothing is going to be done, I [will] have

to file a grievance with the union to have something done about this because [the

student] should be suspended for this,' and 'it is not an environment a teacher

would want to go to where a child is allowed to throw a book at teachers.'"  *Id.*

The plaintiff also testified at his deposition that he was "'upset' by [the

principal's] decision not to discipline the student and concerned that 'if this child

could do this to [him]...it would put the...other students at risk.'"  *Id.*  The Eastern

District of New York[4] engaged in a lengthy analysis of whether his speech was a

matter of public concern and found "it cannot seriously be contested that the

---

[4] On appeal, the Second Circuit held that the plaintiff was "speaking pursuant to his official duties and thus not as a citizen."  *Weintraub*, 593 F.3d at 199.  Accordingly, they held that his speech was not protected by the First Amendment and there was no cause to address whether it was related to a "matter of public concern."  *Id.* at 201.  They did not comment on or specifically overrule any portion of the lower court's analysis as to the question of public concern.

content of speech questioning an administrative response, or lack thereof, to discipline problems in the classroom relates to a matter of public concern…" *Weintraub*, 423 F. Supp. 2d at 51-52 ("the specific issue of student violence against teachers presents an issue of public concern in its own right.").

Unlike in *Weintraub*, however, Plaintiff's speech was not a formal employee grievance, it was a post made on a private, members only Facebook page. (ECF No. 85-4, PageID.1334). Further unlike the statement in *Weintraub,* Plaintiff's post did not question the administration's broader response to the violent incident, it did not allege that the administration failed to suspend or otherwise discipline the student, and it did not caution other teachers about the risk of this happening in their classrooms. *Id.* Plaintiff's post, instead, discussed brief details of the incident and claimed "[n]ot one person in admin came to me to ask me what happened or asked if I was ok." *Id.* This language, even viewed in the light most favorable to Plaintiff, is entirely focused on the administration's lack of concern for *her* following this incident. Plaintiff's "passing" reference to violence in schools is outweighed by the overarching purpose of her post; her private interest. *See Farhat*, 370 F.3d at 592-93.

Plaintiff's statement can also be compared to cases in which speech was determined to be a matter of public concern. Plaintiff cites to *Rankin v.*

17

*McPherson*, 483 U.S. 378 (1987) and *Pickering v. Board of Education*, 391 U.S. 563 (1968) in support of her argument.[5]  In *Rankin*, an individual was fired after she participated in a conversation about an assassination attempt on the President of the United States and stated, in part: "shoot, if they go for him again, I hope they get him."  438 U.S. at 381.  The Court reasoned that this statement, "made in the course of a conversation addressing the policies of the President's administration," was a matter of public concern.  *Id.* at 386.  In *Pickering*, a teacher was fired after "sending a letter to a local newspaper in connection with a recently proposed tax increase that was critical of the way in which the [Board of Education] and the district superintendent of schools had handled past proposals to raise new revenue for the school."  391 U.S. at 564.  The Court held that the employee's letter involved a matter of public concern "on which the judgment of the school administration, including the School Board, cannot, in a society that

---

[5] Plaintiff also cites to *Mahanoy Area School District v. B.L.*, 141 S.Ct. 2038 (2021), as instructive.  (ECF No. 52, PageID.617-18).  *Mahanoy* involved a student who was suspended for using vulgar language in a Snapchat post.  *Mahanoy*, 141 S.Ct. at 2038.  The Court held that "[w]hile public schools may have a special interest in regulating some off-campus student speech," the student's comments made outside of school hours at an off-campus location were protected under the First Amendment.

In the present case, the parties do not contest that Plaintiff's statement *could* have been protected under the First Amendment even though it was made on a private Facebook page. However, to be constitutionally protected, the speech must still involve matters of public interest or concern.  *Mahanoy* did not address this factor and, therefore, does not provide significant guidance in this case.

leaves such questions to a popular vote, be taken as conclusive." *Id.* at 571.

Similarly, in *Leary v. Daeschner*, the Sixth Circuit held that a public school

teacher's speech was a matter of public concern because it involved a petition

which had been signed and presented to a school committee demanding change

in the student-discipline policies, a list of questions regarding the principal's

authority, and formal complaints about "'hallway committee meetings' where

staff members made business decisions for the school without following proper

protocol." 349 F.3d at 895.  The speech involved in the case at hand can be

distinguished from the speech in *Rankin, Pickering*, and *Leary*.  Unlike *Rankin*,

Plaintiff was not making a statement about a widely known event, such as a

presidential assassination attempt.  Further, unlike *Pickering* and *Leary*, Plaintiff's

statement was not made in the context of a broader conversation about the

operation of the school district.  Instead, Plaintiff's statement discusses an event

unique to her and does not mention the name of the school where the alleged

violence occurred.  (ECF No. 85-4, PageID.1334) ("No names or school

mentioned.").  Even considering the content, form, and context of Plaintiff's

Facebook post in the light most favorable to her, it does not include a matter of

public concern and is, therefore, not constitutionally protected.  *Leary*, 349 F.3d

at 899.

Additionally, even if Plaintiff's Facebook post *did* include a matter of public concern, she cannot show that her protected speech was "a motivating factor" behind the alleged adverse actions. *See Marquardt*, 971 F.3d at 549. To show that protected speech was a motivating factor, "the nonmoving party may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent. Rather, the employee must link the speech in question to the defendant's decision to [take action against] her." *Holley v. Giles Cnty., Tenn.*, 165 F. App'x 447, 451 (6th Cir. 2006) (citing *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)). A strong temporal connection, without more, is insufficient to withstand a motion for summary judgment. *Id.* at 451-52. Plaintiff alleges she generally suffered the following adverse employment actions as a result of her Facebook post: "(1) unjustified 'poor' and unsatisfactory performance evaluations; (2) unjust disciplinary actions based on contrived, baseless and discriminatory accusations of misconduct; and (3) conducting a 'sham' investigation of Plaintiff's complaints against Defendant Rendon;" as well as a recommendation that she be terminated and eventual 14-day unpaid suspension. (ECF No. 1, PageID.13-15). However, Plaintiff has not provided any information outside of temporal proximity to suggest her Facebook post was a "motivating factor" for any of these alleged adverse actions. The

formal Conference for the Record Report recommended Plaintiff's termination because "it is alleged that Ms. Summer threatened a student by suggesting they fight, later inappropriately touched that same student, and failed to monitor students resulting in a student cutting their hand."  (ECF No. 85-1, PageID.1315, Conference for the Record Report).  While Plaintiff's Facebook post was listed under the section labeled "Prior Discipline," there is no indication it was considered as a motivating factor for the recommendation.  *Id.*, PageID.1317. Similarly, the Notice of Suspension notes that Plaintiff was determined to have violated the following rules: (1) District Work Rule I; District Work Rule J; District Policy 3210; and the Prohibition against Unprofessional Conduct, which do not involve her Facebook post.  (ECF No. 86-2, PageID.1543, Notice of Suspension).  As to the other alleged retaliatory acts, Plaintiff merely asks the court to speculate that they were in direct retaliation for her Facebook post.  This is insufficient to defeat a motion for summary judgment.  *See Griffin v. Jones*, 170 F. Supp. 3d 956, 963 (W.D. Ky. 2016).

To state a claim under § 1983, a plaintiff must allege that (1) he or she was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and (2) the depravation was caused by a person acting under color of state law.  *Flagg Bros v. Brooks*, 436 U.S. 149, 155 (1978).  Because

Plaintiff's speech was not a matter of public concern and was not a "motivating factor" behind the alleged adverse actions, she has not sufficiently alleged a constitutional violation.  As such, Count I and Count II for violation of Plaintiff's First Amendment rights must be dismissed.

B.    Religious Discrimination (Count III)

Count III of Plaintiff's complaint alleges she was discriminated against because of her Jewish faith in violation of Michigan's Elliott Larsen Civil Rights Act (ELCRA).  (ECF No. 1, PageID.16).  The ELCRA provides, in part, that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status."  Mich. Comp. Laws § 37.2202(1)(a).  Generally, "[c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases."  *Hill v. Oak St. Health MSO LLC*, No. CV 22-10684, 2023 WL 4206065, at *5 (E.D. Mich. June 27, 2023) (citing *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012) (citing *in re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007))).  Absent direct evidence of discrimination, claims brought pursuant to the ELCRA are "subject to the tripartite burden-shifting framework" announced in *McDonnell Douglas Corp.*

22

*v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, a

plaintiff must first demonstrate a prima facie case of employment discrimination

by showing that "(1) [she] is a member of a protected group; (2) [she] was

qualified for the job; (3) [she] suffered an adverse employment action; and (4)

that adverse employment action occurred under circumstances giving rise to an

inference of discrimination."  *In re Rodriguez*, 487 F.3d at 1008 (citing *Hazle v.

Ford Motor Co.*, 464 Mich. 456, 521 (2001)).  In the context of a religious

discrimination claim, the fourth prong generally asks whether an individual "was

treated differently than similarly-situated employees for the same or similar

conduct."  *See Ondricko*, 689 F.3d at 653; *Town v. Mich. Bell Tel. Co.*, 455 Mich.

688 (1997).  Once a plaintiff establishes a *prima facie* case, the burden shifts to

the defendant to demonstrate some "legitimate, nondiscriminatory reason" for

its action.  *See McDonnell Douglas*, 411 U.S. at 802.  "If the defendant produces

such a reason, the burden shifts back to the plaintiff to show that the proffered

reason was a mere pretext for discrimination."  *Jackson v. Genesee Cnty. Rd.

Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).

Plaintiff has sufficiently established that she, "as a[] Jewish employee" is a

member of a protected class and that she was qualified for her position.  (*See* ECF

No. 1, PageID.16-17).  Defendant does not contest these findings.  As to the third

prong of a *prima facie* case, Plaintiff alleges she suffered the following adverse

employment actions:

>(1) assigning Plaintiff, the only Jewish teacher, to an oversize class in
>excess of 36 students, while similarly situated non-Jewish teachers
>were assigned classroom[s] with no more than 18 students;

>(2) penalizing Plaintiff for exercising her right to observe the Jewish
>High Holy Days, while similarly situated non-Jewish teachers were
>not penalized for absence in observance of Christian holidays;

>(3) refusing to allow Plaintiff to participate [] in Defendant Rendon's
>meeting with non-Jewish teachers to ensure fairness in the
>distribution of students with learning and behavioral challenges;

>(4) assigning all of the students with the most serious learning and
>behavioral challenges to Plaintiff;

>(5) disciplining Plaintiff, but not [] disciplining non-Jewish teachers for
>the same or similar conduct, resulting in Plaintiff being receiving [sic]
>unjustified poor and unsatisfactory evaluations;

>(6) falsely accusing Plaintiff of acts of misconduct because of
>Plaintiff's Jewish faith; and

>(7) disciplining Plaintiff for private speech as a private citizen on her
>private DFT members only Facebook page, while not similarly
>disciplining non-Jewish teachers for similar conduct.

*Id*.  First, the court notes that Plaintiff does not specify which Defendant or

Defendants caused any of these alleged injuries, except for Plaintiff's assignment

to an oversized classroom, issuance of an "excessive absence" warning letter, and

discipline following her Facebook post, which are clarified in the "common factual

allegations" section of her complaint.  *See id.*, PageID.12-15 ("she was the only

Neinas teacher assigned **by Defendant Rendon** to an oversized classroom")

("**Defendant Rendon** also discriminated and retaliated against Plaintiff by placing

an 'excessive absence' warning letter in Plaintiff's personnel file for observing

Jewish High Holy Days…") ("**Defendants Vitti and Rendon**…subject[ed] Plaintiff to

a campaign of unjust disciplinary actions, and harassment, recommendations of

unjust termination, that was subsequently reduced to an unjust 14 day unpaid

suspension in retaliation for Plaintiff exercising her right to freedom of speech on

matters of public concern on Plaintiff's private DFT union members only Facebook

page.") (emphasis added).  Outside of these three claims, Plaintiff's complaint

refers to "Defendants" broadly and does not specify which Defendant(s) refused

to allow Plaintiff to participate in Defendant Rendon's meeting, which

Defendant(s) assigned all of the students with serious learning and behavioral

challenges to Plaintiff, which Defendant(s) disciplined Plaintiff but not the

similarly situated non-Jewish teachers leading to poor and unsatisfactory

evaluations, or which Defendant(s) falsely accused Plaintiff of acts of misconduct.

A complaint which "makes only categorical references to 'Defendants'" fails to

"allege, with particularity, facts that demonstrate what *each* defendant did to

violate the asserted constitutional right."  *Marcilis v. Twp. of Redford*, 693 F.3d

589, 596-97 (6th Cir. 2012).  Likewise, any of Plaintiff's claims that fail to specify

the responsible Defendants cannot proceed.  *See Bates v. Green Farms Condo.*

*Ass'n*, 958 F.3d 470, 480 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009))

(allegations must "allow the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.").

As to the remaining claims, the court must next determine whether they

rise to the level of an "adverse action" under the second prong of the *McDonnell*

*Douglas* test.  An adverse employment action has been defined by the Sixth

Circuit as "a materially adverse change in the terms and conditions of [a

plaintiff's] employment."  *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711,

723 (E.D. Mich. 2021) (citing *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th

Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 374 F.3d 789, 795

(6th Cir. 2004))).  Adverse employment actions typically include "hiring, firing,

failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits" rising to the level of a

"significant change in employment status."  *Id.* (citations omitted).  A "bruised

ego" or a "mere inconvenience or an alteration of job responsibilities" is not

sufficient to constitute an adverse employment action.  *Id.* (citing *White*, 364 F.3d

at 797).  The three remaining claims allege that Plaintiff: (1) "was the only Neinas

teacher assigned by Defendant Rendon to an oversized classroom;" (2) received an "excessive absence warning letter" from Defendant Rendon for observing Jewish High Holy Days; and (3) received a recommendation for her termination, that was later reduced to an unjust 14 days unpaid suspension, based on her Facebook post.  (ECF No. 1, PageID.12-14).  On its face, assignment to an oversized classroom rises to the level of a "significant change in employment status" as it requires "significantly different responsibilities."  *See Blick*, 516 F. Supp. 3d at 723.  Additionally, consistent with prior Sixth Circuit holdings, a 14-day unpaid suspension constitutes an adverse employment action.  *See White*, 364 F.3d at 802 ("Taking away an employee's paycheck for over a month is not trivial…"); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001) (holding that a suspension without pay for one week was an adverse employment action even though the employee was later reimbursed for lost wages).  However, Plaintiff's second claim that she received an "excessive absence warning letter" does not rise to the level of an adverse action.  Plaintiff does not allege this was any more than a warning letter and does not admit she suffered any "significant change in employment status" as a result of its issuance. *See Blick*, 516 F. Supp. 3d at 723.

The only remaining claims under Plaintiff's ELCRA claim are, therefore: (1) Defendant Rendon assigned "Plaintiff, the only Jewish teacher to an oversize class in excess of 36 students, while similarly situated non-Jewish teachers were assigned classroom[s] with no more than 18 students;" and (2) Defendants Vitti and Rendon disciplined Plaintiff for "private speech as a private citizen on her private DFT members-only Facebook page, while not similarly disciplining non-Jewish teachers for similar conduct."  (ECF No. 1, PageID.12, 17).  Defendants argue Plaintiff cannot meet the fourth prong of a *prima facie* test by showing "she was discharged or otherwise adversely treated under circumstances that give rise to an inference of unlawful discrimination."  *Miller v. CVS Pharmacy, Inc.*, 779 F. Supp. 2d 683, 692 (E.D. Mich. 2011); (ECF No. 50, PageID.539).  Specifically, Defendants argue that Plaintiff has not identified with any degree of specificity the similarly situated non-Jewish teachers who were either not assigned to oversized classrooms or not disciplined for similar posts on the DFT's Facebook page.  (*See* ECF No. 1, PageID.12, 17) ("all similarly situated non-Jewish teachers were assigned classrooms of no more than 18 students) ("while not similarly disciplining non-Jewish teachers for similar conduct").  To satisfy this element of a *prima facie* case, a plaintiff must show they were similarly-situated to the non-protected employee in all *relevant* respects, yet were treated differently.

28

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) ("the plaintiff was simply 'required to prove that all of the *relevant* aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation.'").  For example, a plaintiff may show individuals "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d. 811, 820 (E.D. Mich. 2011) (citing *Ercegovich*, 154 F.3d at 352).

Plaintiff's complaint alleges, on numerous occasions, that she was "treated differently and less favorably than similarly situated non-Jewish teachers."  (*See* ECF No. 1, PageID.16).  Plaintiff's complaint does not list these teachers or describe them in any way.[6]  At her deposition, Plaintiff testified that Amy Lazarowicz "wasn't being harassed nonstop, she wasn't being, you know, accused of things that she did not do" and had a smaller class size than Plaintiff.  (ECF No.

---

[6] Plaintiff previously sought to amend her complaint to add the names of the similarly situated non-Jewish teachers "Amy Lazarowicz, Erica Terry, Margaret Ewing, Deidre Davis, Rose Becker, and Lisa Lipcomb."  (*See* ECF No. 77, PageID.900).  However, the simple addition of these names, without more, is still insufficient to demonstrate that they were similarly situated in all relevant aspects to meet this element of a *prima facie* case.  As such, even if the court had granted Plaintiff's earlier motion, the outcome of this motion would likely have been the same.

85-17, PageID.1447-48).  However, Plaintiff admitted that she did not directly discuss Lazarowicz's treatment with her, stating that it was "just [her] observations."  *Id.*, PageID.1448 ("[Lazarowicz] didn't tell me that she was being treated the same way when I told her how I was being treated.").  Plaintiff described the treatment of the other similarly situated employees in a similar light, stating: "It's my belief that they – mostly everybody in that school was treated much better than me.  But it is my belief."  *Id.*, PageID.1448.  Plaintiff also stated that she generally did not know the experience level or educational background of the other similarly situated teachers.  *Id.*, PageID.1449 ("[m]ostly everybody has their master's degree.  But I can't, you know, I can't sit here and say positively."); PageID.1450 (when asked about Bert Wilberger, a Neinas teacher, she responded "I am not a hundred percent if he had a master's degree. He wasn't at Neinas very long.") ("Q. Did Linda Weir tell you she had a master's degree? A. No.").  Plaintiff also provided no evidence of other employees making similar Facebook posts on the DFT Facebook page or facts suggesting they were not disciplined for these posts.

The Sixth Circuit has held there is "[n]o doubt disparate treatment of similarly situated people may support an inference of discrimination."  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

However, an individual must present enough information about these individuals that a jury could reasonably make such inference of discrimination.  Plaintiff testified that no one at Neinas ever made an explicit statement that suggested she was being discriminated against based on her religion.  (ECF No. 85-17, PageID.1451) (Q. [] Did anyone make any statement verbally to you that's made you believe you were being discriminated against based on your religion? A. Not verbal.").  She also testified that Dr. Vitti likely did not know that she was Jewish. *Id.*, PageID.1452 ("I don't believe Dr. Vitti knew that I was Jewish, so I'm not accusing him of any of that.").  Further, the evidence presented to the court does not reveal (a) the names of the similarly-situated teachers; (b) the grades they taught during the relevant school year; (c) their prior teaching experience; (d) whether or not they had a master's degree; (e) whether or not they actually suffered discipline or harassment similar to Plaintiff's; or (f) whether they ever made similar posts on the DFT Facebook page.  Without this information, any inference of discrimination on the basis of Plaintiff's religion would be mere speculation.  Because Plaintiff has not created a genuine issue of material fact on the fourth prong to establish a *prima facie* test, Defendants' motion for summary judgment on the ELCRA claim must be granted.

## V.    MOTION FOR SANCTIONS

On December 12, 2023, Plaintiff filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  (ECF No. 81).  Plaintiff argues sanctions are appropriate because "any reasonable attorney would not have continued to argue that Plaintiff's Facebook post regarding physical violence in her classroom was 'not' a matter of public concern, after his own clients [] conceded that it was a matter of public concern."  *Id.*, PageID.1002.  However, as the court concluded above, the explicit text of Plaintiff's Facebook post did *not* include a matter of public concern.  As such, Plaintiff has not demonstrated that sanctions are merited pursuant to Rule 11.  Plaintiff's motion for sanctions is **DENIED.**

## VI.    CONCLUSION

Even viewing the facts of this case in the light most favorable to Plaintiff, the court finds she has failed to establish the essential elements of each of her claims and, as a result, Defendants are entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323 ("The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").  Defendants' motions for summary judgment are **GRANTED** and Plaintiff's claims are **DISMISSED**.  This is a final order and closes the case.

**SO ORDERED**.

Dated:  January 31, 2024                    s/ F. Kay Behm
                                            F. Kay Behm
                                            United States District Court Judge