# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>Kelly L. Stephens<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed: March 06, 2026

Mr. Theophilus Efrem Clemons Sr.
Detroit Public Schools
3011 W. Grand Boulevard
Suite 1002
Detroit, MI 48202-2710

Mr. Dewey Rick Martin
13900 Woodward Avenue
Highland Park, MI 48203

    Re: Case No. 24-1729, *Meredith Summer v. Detroit Public Schools, et al*
       Originating Case No. 4:21-cv-12936

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                    Sincerely yours,

                    s/Cathryn Lovely
                    Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0110n.06

No. 24-1729

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MEREDITH SUMMER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| DETROIT PUBLIC SCHOOLS | ) | |
| COMMUNITY DISTRICT, *et al.*, | ) | |
| | ) | OPINION |
| Defendants-Appellants. | ) | |
| | ) | |

**FILED**
Mar 06, 2026
KELLY L. STEPHENS, Clerk

Before: CLAY, KETHLEDGE, and BUSH, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Meredith Summer appeals the district court's grant of summary judgment to Defendants Detroit Public Schools Community District, Nikolai Vitti, and Adriana Rendon on the following civil rights claims pertaining to her employment: (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983; and (2) religious discrimination pursuant to the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202. For the reasons set forth below, we **AFFIRM** the district court's judgment.

### I. BACKGROUND

#### A. Factual History

On or around June 25, 2018, Plaintiff Meredith Summer began teaching at Neinas Dual Language Learning Academy ("Neinas"), a school within Defendant Detroit Public Schools Community District ("DPSCD"). At all relevant times, Defendant Nikolai Vitti ("Vitti") was the

- 1 -

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

Superintendent of DPSCD and Defendant Adriana Rendon ("Rendon") was the principal of Neinas.

Summer was the only Jewish teacher at Neinas. Summer alleges that, in September 2018, she received an assignment for a classroom of 36 or more students, which violated the Detroit Federation of Teachers' collective bargaining agreement, while non-Jewish teachers received classrooms of no more than 18 students. Although Rendon agreed to reduce Summer's class size, Summer alleges that she was not allowed to participate in the meeting that determined how to reduce the oversized class and that her new assignment included students that had behavioral and learning challenges. Additionally, when Summer took days off from work for a Jewish holiday, she received a warning letter for excessive absences and decided not to take such days off in the future because she "was concerned." Summer Dep., R. 85-17, Page ID #1455.

Summer alleges that on October 25, 2019, a student attacked her in the classroom. That evening, Summer posted the following on a "private/members only" Facebook page for the Detroit Federation of Teachers:

> "A 6th grade girl in my class hit me and pulled my hair today because I took a paper away from her that had [i]nappropriate writing on it. First time in 20 years this has ever happened! Not one person in admin came to ask me what happened or ask if I was okay. 'Expect respect?'"

Compl., R. 1, Page ID #13; R. 85-11, Page ID #1389. Following that post, Summer received a written warning from DPSCD. An "Employee Statement" dated October 28, 2019 states that Summer's Facebook post violated school-district policy, that Rendon initiated an investigation into the incident, which revealed that Summer had told the student to "step in the hallway to fight," and that the student was recommended for expulsion review. R. 91-1, Page ID #1634.

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

A report issued on June 4, 2020 by DPSCD administration detailed an investigation into Summer's alleged misconduct from 2018 to 2020, which indicated that, among other instances of alleged misconduct, Summer threatened a student to fight in October 2019, failed to monitor students in January 2020, and inappropriately touched a student in February 2020. Based on those findings, DPSCD administration, including Vitti, recommended Summer's termination. On September 28, 2020, Summer received a letter from DPSCD administration stating that following "an investigation into [her] alleged misconduct, including the allegations that [she] verbally threatened a student, failed to monitor students resulting in a student injury occurring, and grabbed a student at Neinas," Summer would receive a 14-day, unpaid suspension in lieu of the recommended termination. R. 86-2, Page ID #1543. Summer eventually transferred to another school, and she alleges that DPSCD sent her new school copies of her 14-day suspension letter and other documents relating to the investigation into her alleged misconduct.

### B. Procedural History

On December 12, 2021, Plaintiff filed a complaint in Circuit Court for the County of Wayne, Michigan, bringing the following: (1) a 42 U.S.C. § 1983 claim against Defendant DPSCD for reckless indifference to Plaintiff's First Amendment right to free speech; (2) a § 1983 claim against Defendants Vitti and Rendon for retaliation in violation of the First Amendment; and (3) a state claim against Defendants DPSCD, Vitti, and Rendon for religious discrimination in violation of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202. Defendants removed the lawsuit to the United States District Court for the Eastern District of Michigan. On January 31, 2024, the district court granted summary judgment to Defendants on all of Plaintiff's claims. This appeal followed, wherein Plaintiff challenges the district court's grant of summary judgment to

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

Defendants on her retaliation claim under the First Amendment and religious discrimination claim under the Elliott-Larsen Civil Rights Act.

## II.    DISCUSSION

### A.  Standard of Review

We review the district court's grant of summary judgment *de novo*. *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). "In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B.  Retaliation under the First Amendment

Plaintiff contends that the warning letter stating that she violated the school district's policy, the recommendation of her termination, and the 14-day suspension constituted unconstitutional retaliation for her Facebook post regarding the altercation with a student.

To prevail on a First Amendment retaliation claim, Plaintiff "must show that (1) [she] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [her] protected conduct." *Noble v. Cincinnati & Hamilton Cnty. Pub. Library*, 112 F.4th 373, 380 (6th Cir. 2024) (quoting *Bennett v. Metro Gov't of Nashville & Davidson Cnty.*, 977 F.3d 530, 537 (6th Cir. 2020)). Since Plaintiff is a public employee, whether her "speech was constitutionally protected under the first element depends on a 'three-prong test.'" *Id.* at 380-81 (quoting *Myers v. City of Centerville*, 41 F.4th 746,

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

760 (6th Cir. 2022)). First, Plaintiff "must have spoken as a private citizen" and "not pursuant to [her] official duties." *Id.* at 381 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Second, her "speech must address a matter of public concern." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 142 (1983)). Third, her "interests in speaking on matters of public concern must outweigh the state's interest, 'as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

Plaintiff argues that she engaged in protected speech by posting this statement on the "private/members only" Facebook page for the Detroit Federation of Teachers:

> "A 6th grade girl in my class hit me and pulled my hair today because I took a paper away from her that had [i]nappropriate writing on it. First time in 20 years this has ever happened! Not one person in admin came to ask me what happened or ask if I was okay. 'Expect respect?'"

Compl., R. 1, Page ID #13; R. 85-11, Page ID #1389. It is undisputed that Plaintiff spoke as a private citizen in using her personal Facebook account to post this statement.

Plaintiff has not, however, shown that this post involved a matter of public concern. "A 'matter of public concern' is one that involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Kiessel v. Oltersdorf*, 459 F. App'x 510, 513 (6th Cir. 2012) (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001)). "To determine whether speech involves a matter of public concern, we look to the 'content, form, and context of a given statement, as revealed by the whole record.'" *Meriwether v. Hartop*, 992 F.3d 492, 508 (6th Cir. 2021) (quoting *Connick*, 461 U.S. at 147-48). "The linchpin of the inquiry is . . . the extent to which the speech advances an idea transcending personal interest or opinion which impacts our

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

social [or] political lives." *Id.* (quoting *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1189 (6th Cir. 1995)). "Quintessential examples include allegations of public corruption, mismanagement, or misconduct in government, as well as accusations of discrimination." *Kirkland v. City of Maryville*, 54 F.4th 901, 908 (6th Cir. 2022) (citations omitted).

By contrast, "matters only of personal interest, absent unusual circumstances" are not afforded constitutional protection because "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147. Thus, an employee's "speech about 'internal personnel disputes' generally does not involve matters of public concern." *Myers*, 41 F.4th at 761 (quoting *Brandenburg*, 253 F.3d at 898); *see also Patterson v. Kent State. Univ.*, 155 F.4th 635, 649 (6th Cir. 2025) ("[S]peech about internal personnel disputes or management doesn't cut it."). And speech involving "[r]un-of-the-mill 'employee beef' does not implicate the public concern" just because it may have reached a public audience. *Patterson*, 155 F.4th at 649 (citation modified) (quoting *Myers*, 41 F.4th at 761); *see also Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988) (holding that an employee's speech did not address a matter of public concern where it highlighted "the quintessential employee beef: management has acted incompetently" (quoting *Murray v. Gardner*, 741 F.2d 434 (D.C. Cir. 1984))). Moreover, "passing or fleeting references to an arguably public matter do not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest." *Farhat v. Jopke*, 370 F.3d 580, 592-93 (6th Cir. 2004) (citations and quotations omitted). For the "Sixth Circuit has explained that the point of the protection afforded public employees is to allow public employees a voice on issues actually affecting and interesting the community at large." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 897 (6th Cir. 2003).

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

Plaintiff's post does not involve any "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg*, 253 F.3d 898. The post does not feature any "accusations of discrimination" or "allegations of public corruption, mismanagement, or misconduct in government." *Kirkland*, 54 F.4th at 908 (citations omitted). Rather, the post focuses on a matter "of personal interest"—Plaintiff experienced a harmful interaction with a student and expressed frustration that her school administration had not checked in with her after the interaction. *Connick*, 461 U.S. at 147. The post highlights an "internal personnel dispute" between Plaintiff, a student, and school administration, along with "employee beef" harbored by Plaintiff, neither of which implicate public concern under our precedent. *Patterson*, 155 F.4th at 649 (citation modified). Plaintiff has not shown that the post "advances an idea transcending personal interest or opinion which impacts our social [or] political lives." *Meriwether*, 992 F.3d at 508.

Plaintiff argues that the post involves a matter of public concern because it features classroom violence. Plaintiff asserts that "an attack by a student on *any* teacher is an attack on the *entire* teaching profession itself, and on the sanctity of the classroom" and "[d]irect classroom violence against an individual Jewish teacher includes the larger issues of protecting the teaching profession itself, and the ability to provide an educational environment that promotes the *peaceful* resolution of classroom disputes." Appellant's Br. at 18, 9. But the post does not discuss any larger issues surrounding ongoing classroom violence or the public teaching profession overall, as Plaintiff explicitly states in the post that the interaction with the student was the "[f]irst time in 20 years this has ever happened." R. 85-11, Page ID #1389. Even so, the post focuses on Plaintiff's personal grievance regarding how her school administration handled the incident, and the "passing" or "fleeting" reference to a violent interaction in the classroom does "not elevate the

- 7 -

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

speech to a matter of public concern" because the "focus or point of the speech" is Plaintiff's own private interest. *See Farhat*, 370 F.3d at 592. Therefore, even viewing the facts in the light most favorable to Plaintiff, she has failed to raise a genuine issue of whether she spoke on a matter of public concern.

Since Plaintiff has not established that she spoke on a matter of public concern, she has not shown that she engaged in protected speech as a public employee. Accordingly, the district court did not err in granting summary judgment to Defendants Vitti and Rendon on Plaintiff's retaliation claim under the First Amendment.

### C. Religious Discrimination under the Elliot-Larsen Civil Rights Act

Plaintiff contends that her assignment to an oversized classroom constituted religious discrimination in violation of the Elliot-Larsen Civil Rights Act ("ELCRA") because she was the only Jewish teacher at Neinas.

Section 202 of the ELCRA provides that an "employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion." Mich. Comp. Laws § 37.2202(1)(a). "Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007) (quoting *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)). "Intentional discrimination can be proven by direct and circumstantial evidence." *Id.* (citation omitted).

Where, as here, a plaintiff lacks direct evidence of discrimination, she "may still establish a *prima facie* case of discrimination by proving the elements of [her] cause of action as set out in federal discrimination jurisprudence." *Id.* at 1007-08 (quoting *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir. 1997) (citation modified)). "Michigan courts utilize the federal

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

*McDonnell Douglas* burden-shifting framework for evaluating discrimination claims founded upon circumstantial evidence." *Id.* at 1008. Under the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case of discrimination by showing that (1) she "is a member of a protected group;" (2) she "was qualified for the job," (3) she "suffered an adverse employment action;" and (4) "that adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Id.* If Plaintiff establishes a prima facie case, then the burden shifts to Defendants "to articulate a legitimate, nondiscriminatory rationale for the adverse employment action." *Id.* If Defendants do so, the burden shifts back to Plaintiff "to demonstrate that the articulated reason is a mere pretext for discrimination." *Id.*

It is not disputed that Plaintiff is a member of a protected group because she is Jewish and that she was qualified for her job as a teacher. Plaintiff also may have shown that she experienced an adverse employment action. An adverse employment action is "a materially adverse change in the terms and conditions of a plaintiff's employment." *Deleon v. Kalamazoo Cnty. Road Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citation and quotations omitted). "A mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action." *Id.* (citations and quotations omitted). An adverse employment action involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). A "reassignment of job duties is not automatically actionable" and, instead, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (citation and quotations omitted).

- 9 -

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

In her complaint, Plaintiff alleged the following adverse employment actions regarding her religious discrimination claim: "(1) assigning Plaintiff, the only Jewish teacher to an oversized class in excess of 36 students, while similarly situated non-Jewish teachers were assigned classrooms with no more than 18 students; (2) penalizing Plaintiff for exercising her right to observe the Jewish High Holy Days, while similarly situated non-Jewish teachers were not penalized for absences in observance of Christian holidays; (3) refusing to allow Plaintiff to participate in Defendant Rendon's meeting with non-Jewish teachers to ensure fairness in the distribution of students with learning and behavioral challenges; (4) assigning all of the students with the most serious learning and behavioral challenges to Plaintiff; (5) disciplining Plaintiff, but not disciplining non-Jewish teachers for the same or similar conduct, resulting in Plaintiff receiving unjustified poor and unsatisfactory evaluations; (6) falsely accusing Plaintiff of acts of misconduct because of Plaintiff's Jewish faith; and (7) disciplining Plaintiff for private speech as a private citizen on her private Detroit Federation of Teachers members-only Facebook page, while not similarly disciplining non-Jewish teachers for similar conduct." Compl., R. 1, Page ID #17 (citation modified). On appeal, however, Plaintiff focuses only on the first alleged adverse employment action, stating that her "religious discrimination claim is based upon the fact that she was the only Jewish teacher at the school, and the only teacher assigned to an oversized classroom." Appellant's Br. at 33. Plaintiff does not address the other adverse employment actions that she alleged regarding her religious discrimination claim. Because Plaintiff does not mention or develop argument for any of the other adverse employment actions that she alleged in her complaint, she waives our review of those issues. *See Fitts v. Sicker*, 232 F. App'x 436, 442 (6th Cir. 2007) ("Because [the plaintiff] failed to address this issue in his appellate brief, it is deemed

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

waived."); *see also Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008) ("This argument is waived . . . because [the plaintiff] failed to develop the same on appeal.").

Plaintiff alleges that she was assigned a class containing 36 or more students, while other teachers at Neinas were assigned classes containing no more than 18 students. Plaintiff also alleges, however, that Defendants addressed her assignment to an oversized classroom and reduced the size of her classroom. It is not clear in the record before us how long Plaintiff retained an oversized classroom before Defendants reduced the size. If Defendants reduced the size of Plaintiff's classroom immediately or soon after she received the assignment to an oversized classroom, then Plaintiff could not show that she experienced an adverse employment action, for such a short-lived assignment to an oversized classroom would be *de minimis*.

If Plaintiff did take on the increased responsibilities and workload associated with an oversized classroom, then viewing the facts in the light most favorable to Plaintiff, the assignment of the oversized classroom arguably constituted a "materially adverse change in the terms and conditions of . . . employment." *Deleon*, 739 F.3d at 918. Plaintiff's assigned classroom involved nearly twice as many students than her fellow teachers had, and an increase of over 18 students in the classroom may have been more than a "mere inconvenience or an alteration of job responsibilities." *Id.* Rather, a "reasonable person" in Plaintiff's position would likely find the assignment of such a disproportionately heavy workload "materially adverse." *See Burlington N. and Santa Fe Ry. Co*, 548 U.S. at 71; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (holding that a teacher's assignment of a class with increased numbers of students constituted an "adverse employment action" because it involved "excessive workload" (citations omitted)).

- 11 -

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

Regardless of whether Plaintiff has shown that she experienced an adverse employment action, she has not shown that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. To support an inference of discrimination, Plaintiff must show that non-Jewish employees who are "similarly situated in all relevant aspects" received "more favorable treatment" than Plaintiff. *Ayers-Jennings v. Fred's Inc.*, 461 F. App'x 472, 476 (6th Cir. 2012) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-53 (6th Cir. 1998)). To be similarly situated, a comparable employee "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

In her appellate brief, Plaintiff does not present any argument regarding at least one non-Jewish employee who was similarly situated in all relevant aspects but received more favorable treatment than Plaintiff. Plaintiff mentions that a non-Jewish teacher named Amy Lazarowicz ("Lazarowicz") received more favorable treatment because she "had a smaller class size," Appellant's Br. at 16 (quoting Summer Dep., R. 85-17, Page ID #1447), but Plaintiff does not discuss how they were similarly situated. Moreover, Plaintiff offers no evidence to substantiate her claim that Lazarowicz received more favorable treatment and, instead, clarified in her deposition testimony that it was "[j]ust my observations" and "my belief that . . . mostly everybody in that school was treated better than me." Summer Dep., R. 85-17, Page ID #1148. Further, Lazarowicz did not even teach the same grade as Plaintiff.

Rather than provide evidence regarding a similarly situated non-Jewish teacher who received more favorable treatment, Plaintiff incorrectly contends that "the only relevant factor" is that her assignment to an oversized class violated the Detroit Federation of Teachers' collective

No. 24-1729, *Summer v. Detroit Public Schools, et al.*

bargaining agreement, which applied to all teachers. Appellant's Br. at 34 (quotations omitted). But whether Plaintiff's assignment violated that agreement does not establish that similarly situated non-Jewish teachers received more favorable classroom assignments. Plaintiff thus offers only the conclusory assertion that non-Jewish teachers received more favorable treatment at Neinas, without substantiating her allegation with any evidence or explaining why any of those teachers were similarly situated. Plaintiff's conclusory assertion, without more, is insufficient to create an inference of discrimination. *See Mitchell*, 964 F.2d at 681-82. Therefore, even viewing the evidence in the light most favorable to Plaintiff, she has failed to raise a genuine issue of whether an adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Since Plaintiff has not shown that an adverse employment action occurred under circumstances giving rise to an inference of discrimination, Plaintiff cannot make a prima facie case of religious discrimination. Accordingly, the district court did not err in granting summary judgment to all Defendants on Plaintiff's religious discrimination claim under the ELCRA.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.

- 13 -

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-1729

MEREDITH SUMMER,

     Plaintiff - Appellant,

     v.

DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT;
NIKOLAI VITTI and ARIANA RENDON, individually and
in their official capacities,

     Defendants - Appellees.

> **FILED**
> Mar 06, 2026
> KELLY L. STEPHENS, Clerk

Before:  CLAY, KETHLEDGE, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Flint.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

_____
Kelly L. Stephens, Clerk